ILLINOIS CAR AND MANUFACTURING COMPANY *v.* BROWN.

[No. 9,222. Filed May 11, 1917. Rehearing denied April 7, 1917. Transfer denied April 5, 1918.]

1. MASTER AND SERVANT.—*Injuries to Servant.*—*Negligence.*—*Unguarded Machinery.*—*Statute.*—Under §9 of the Factory Act, Acts 1899 p. 231, §8029 Burns 1914, requiring that all vats, pans, etc., be properly guarded, failure to guard the specified machinery is negligence *per se*, and all dangerous machines of every description must be properly guarded, if it is practicable to do so. p. 322.

2. MASTER AND SERVANT.—*Injuries to Servant.*—*Guarding Machinery.*—*Practicability.*—*Jury Question.*—Under §9 of the Factory Act, Acts 1899 p. 231, §8029 Burns 1914, requiring certain machinery to be properly guarded, whether a particular machine is dangerous, and whether it is practicable to guard it, are questions of fact for the jury. p. 322.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Action.*—*Complaint.*—*Sufficiency.*—In a servant's action against the master for injuries sustained by the breaking of an emery wheel, a complaint alleging that the wheel was unguarded, contrary to the laws of Indiana, that while unguarded it was dangerous to employes, and that the wheel could have been guarded at a small expense, so as to make it safe, and without interfering with the proper use thereof, is good as against a demurrer on the ground that an emery wheel is not such a machine as §9 of the Factory Act, Acts 1899 p. 231, §8029 Burns 1914, requires to be guarded. p. 322.

4. MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of Risk.*—*Violating Statutory Duty.*—In a servant's action against the master for personal injuries, the doctrine of assumed risk has no application where the alleged negligence consists of the violation of a duty imposed by statute. p. 323.

5. MASTER AND SERVANT.—*Injuries to Servant.—Guarding Dangerous Machinery.—Statute.*—Under §9 of the Factory Act, Acts 1899 p. 231, §8029 Burns 1914, where it is not practicable to guard a dangerous machine so fully and securely as to eliminate all danger, but it is practicable to guard it partially and thereby reduce the danger to the minimum, such partial guarding is in compliance with the statutory requirement. p. 325.

6. APPEAL.—*Review.—Answers to Interrogatories.—Verdict.—Presumptions.*—In determining whether there is an irreconcilable conflict between the answers to interrogatories and the general verdict, the court on appeal must indulge in all inferences and reasonable presumptions in favor of the general verdict, and may consider any fact favorable under the issues. p. 326.

7. APPEAL. — *Review. — Answers to Interrogatories. — Verdict.—Conflict.*—In a servant's action for personal injuries resulting from the breaking of an unguarded emery wheel, a general verdict for plaintiff is not in irreconcilable conflict with answers to interrogatories to the effect that it was necessary to leave one-quarter of the wheel exposed when equipped with a guard, since such exposed portion might have been the lower quarter of the wheel, the breaking of which would not have injured the plaintiff. p. 326.

8. MASTER AND SERVANT.—*Injuries to Servant.—Negligence.—Proof.*—In a servant's action against the master for personal injuries sustained when an unguarded emery wheel broke, it was necessary to show, in order to sustain a finding that defendant was negligent, that the employer should have anticipated the exact injury, but it is sufficient if by ordinary care and prudence the employer should have known that some injury might result from the failure to guard the wheel. p. 328.

9. MASTER AND SERVANT.—*Injuries to Servant.—Negligence.*—In a servant's action for injuries caused by the breaking of an unguarded emery wheel, where the jury found that such wheel was dangerous, defendant was bound to take notice of its dangerous character and anticipate that injury would result from failure to properly guard it. p. 328.

From Porter Circuit Court; *H. H. Loring,* Judge.

Action by William Brown against the Illinois Car and Manufacturing Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Bomberger, Curtis, Starr & Peters* and *Elmer E. Stevenson,* for appellant.

*Milo M. Bruce* and *D. E. Kelly,* for appellee.

DAUSMAN, J.—This action was instituted by appellee to recover damages for personal injuries resulting from alleged negligence. The cause was tried on the issue formed by the general denial addressed to the first paragraph of amended complaint, a demurrer to said paragraph having been overruled and all other paragraphs of complaint having been withdrawn. Verdict and judgment for appellee in the sum of $4,741.

The errors assigned are: (1) The court erred in overruling the demurrer to the first paragraph of amended complaint; (2) the court erred in overruling appellant's motion for judgment on the interrogatories and answers thereto; and (3) the court erred in overruling appellant's motion for a new trial.

The body of the said paragraph of complaint is as follows: "That the defendant is now and was on the 1st day of November, 1910, a duly organized and existing corporation, and engaged in the manufacture and repair of railroad cars, among other things, at Hammond, Indiana, and it was the owner of a number of buildings in which it carried on said work or business, and employed several hundred men therefor. That the plaintiff, at the time of receiving the injury hereafter mentioned, was married and thirty-one years of age, and was strong, robust and in good health at the time of his injury herein stated. That at the time of said injury the plaintiff was in the employ of the defendant and was working in one of the defendant's said buildings known as the blacksmith shop in which was a certain iron shaft with pulleys, belts and emery wheels which were operated, when used as hereafter stated, by means of electric power,

and all of which were used as provided by the defendant in connection with its said work; that in the center of each of said emery wheels was a one-inch hole; that either of said emery wheels when used as aforesaid, was placed over and attached, by means of said hole, to either end of said shaft, which was about twenty inches long, with threads and flange-burs on each and to clasp and hold the wheel being used; that at the center or middle of said shaft was a pulley connected by means of a belt to another pulley, which was also attached to a shaft; that said emery wheel shaft was attached to a certain cast iron box about one foot high, one foot long and one foot wide, with two of its sides at the top curved or concaved, in which the pulley on said shaft revolved; that said cast iron box rested upon and was attached by bolts to a plank bench, or table, about two feet wide and four feet long and the top thereof about three feet from the ground or floor.  That said emery wheels were provided and used by the defendant to grind various kinds of iron, steel, and other metal and revolved at great rapidity, about three thousand revolutions per minute, when being used and operated as aforesaid, and it was necessary for the person thus using one of said emery wheels to stand immediately in front of it, which revolved towards him.  That said emery wheels varied in thickness and diameter to meet the requirements of said work and were kept by the defendant in a particular case or on a shelf provided therefor.  That the person using one of said emery wheels was required, and it was his duty, to select therefrom one with which the particular work could be done, and place and replace the same on said emery wheel shaft.  That on the 1st day of Novem-

ber, 1910, the plaintiff was directed, ordered, required and permited to grind a certain cast iron car-truck slide, and undertook to grind and was grinding the same, in the manner heretofore stated, with one of said emery wheels provided and used by the defendant to do that particular work and which was three-eighths of an inch thick and fourteen inches in diameter, which was then and there unguarded, open, exposed, and without guard and protection, contrary to the laws of Indiana, relating to the use of machinery in industrial establishments and providing for the safety of laborers.   That said unguarded and unprotected emery wheels, when being used as aforesaid, were dangerous to employes in said blacksmith shop, who were required to work with and about them as defendant well knew prior to the injury complained of herein.   That said emery wheels, when being used as aforesaid, could and should have been guarded with a steel hood and guard to fit over the same at small cost, and thereby made safe, without interfering with the proper use thereof, which facts the defendant well knew and could have known by the exercise of ordinary care.   That on said date, the plaintiff, while in the exercise of due care and caution, grinding said slide as aforesaid, said emery wheel broke and a part thereof struck him with great force and violence on the front and left side of his head and face and felled him to the ground or floor, where he lay helpless for some time, until found by his fellow workmen; that the plaintiff was then removed to a hospital where he was confined for fourteen days and his injuries received medical treatment; that by said blow the base of plaintiff's skull over his left eye was bruised, fractured and broken, and it was necessary to remove

a number of pieces of bones from his skull; and a wound or cut was inflicted on the left side of his face six or seven inches long, and a part of his scalp torn loose; and a hole made in his skull over his left eye which remained open and festered for a period of five months; and his cheek and lip on the left side of his face were cut, bruised and lacerated and his upper jaw and several of his teeth were made numb and paralyzed on that side of his face; that the nerves and muscles on that side of his face and head were severed, bruised, injured and paralyzed and do not perform their functions as they should and did before said injury; that he was made wholly blind for a period of five days immediately following said injury and his eyesight has been impaired in that they are weak and sensitive to the slightest exposure and exertion; that the left side of his head had become and is becoming enlarged; that said hole over his left eye is now a fourth of an inch or more in depth and three inches long; that his face has been disfigured forever as above stated; and by leaving a deep scar of said length; that he was thereby made sick and caused to continually suffer great excruciating pain in his eyes, face and head and will continue to suffer pain so long as he lives; that he has been made stupid and caused to have weak and dizzy spells which he did not have before said injury; that his memory has been impaired in that he is forgetful; that said injuries have produced a permanent nervous condition and have rendered the plaintiff incapable of performing any labor which requires mental or physical exertion; that by reason of said injuries his mind is impaired and thereby made insane and to suffer from epilepsy. That all of said injuries aforesaid are per-

manent and plaintiff will be permanently disabled during his life. That by reason of said injuries and the negligence of the defendant, the plaintiff has become liable for a hospital bill of $14.00 and a doctor bill of $51.00 and has expended considerable money to cure himself of said injuries, the exact amount plaintiff cannot now state, and he was made unable to do any work for eleven months after said injury, and will be required to expend large sums of money therefor in the future. That all of said injuries and things complained of were caused by the negligence of the defendant in not properly guarding said emery wheel and in directing, ordering, requiring and permitting the plaintiff to use the same unguarded, all of which was without fault of the plaintiff.''

The alleged defects in the complaint, as presented by appellant's brief, are: (1) That an emery wheel is not such a machine as the Factory Act requires to be guarded; and (2) that the complaint does not negative assumption of risk.

(1) Section 9 of the act commonly known as the Factory Act, Acts 1899 p. 231, being §8029 Burns 1914, contains the following clause: ''All vats, pans, saws, planers, cogs, gearing, belting, shafting, setscrews, and machinery of every description therein, shall be properly guarded''; and the sufficiency of the complaint depends upon the construction put upon said clause by the courts. As supporting the first alleged defect appellant relies on the case of *National Drill Co.* v. *Myers* (1907), 40 Ind. App. 322, 81 N. E. 1103. Evidently in that case the court was misled by the process of reasoning in the case of *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290, 75 N. E. 277, in which an attempt was made to

utilize the inapt doctrine of *ejusdem generis* in construing said clause. *Pein* v. *Miznerr* (1907), 41 Ind. App. 255, 83 N. E. 784. But the Laporte Carriage Company case has been modified and clarified by the decision in the case of *U. S. Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 88 N. E. 69. Since the National Drill Company case conflicts with the later cases, it must be regarded as having been overruled.

By the many cases in which the courts have construed said clause the following propositions are firmly established: (1) That all vats, pans, saws, planers, cogs, gearing, belting, shafting, and setscrews must be properly guarded, and the failure so to do is negligence *per se;* (2) all *dangerous* machines of every description must be properly guarded, if practicable so to do; and (3) that whether a particular machine is dangerous, and whether it is practicable properly to guard it, are questions of facts for the jury, to be determined from all the circumstances, under proper instructions.

A thoughtful reading of the complaint will disclose that the circumstances are detailed therein with sufficient fulness and definiteness to have entitled appellee to present his case to the jury, as against the first alleged defect. *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 64 N. E. 610, 58 L. R. A. 944; *Green* v. *American Car, etc., Co.* (1904), 163 Ind. 135, 71 N. E. 268; *Buehner Chair Co.* v. *Feulner* (1904), 164 Ind. 368, 73 N. E. 816; *M. S. Huey Co.* v. *Johnston* (1904), 164 Ind. 489, 73 N. E. 996; *Robertson* v. *Ford* (1904), 164 Ind. 538, 74 N. E. 1; *Laporte Carriage Co.* v. *Sullender, supra; Bemis, etc., Co.* v. *Krentler* (1906), 167 Ind. 653, 79 N. E. 974;

*U. S. Cement Co.* v. *Cooper, supra; King* v. *Inland Steel Co.* (1911), 177 Ind. 201, 96 N. E. 337, 97 N. E. 529; *Cincinnati, etc., R. Co.* v. *Armuth* (1913), 180 Ind. 673, 103 N. E. 738; *Inland Steel Co.* v. *Ilko* (1913), 181 Ind. 72, 103 N. E. 7; *Nickey* v. *Dougan* (1904), 34 Ind. App. 601, 73 N. E. 288; *Baltimore, etc., R. Co.* v. *Cavanaugh* (1904), 35 Ind. App. 32, 71 N. E. 239; *National Fire Proofing Co.* v. *Roper* (1906), 38 Ind. App. 600, 77 N. E. 370; *Kintz* v. *Johnson* (1906), 39 Ind. App. 280, 79 N. E. 533; *Tucker, etc., Mfg. Co.* v. *Staley* (1906), 40 Ind. App. 63, 80 N. E. 975; *Grace* v. *Globe Stove, etc., Co.* (1907), 40 Ind. App. 326, 82 N. E. 99; *U. S. Furniture Co.* v. *Taschner* (1907), 40 Ind. App. 672, 81 N. E. 736; *Pein* v. *Miznerr, supra; Robbins* v. *Ft. Wayne Iron, etc., Co.* (1907), 41 Ind. App. 557, 84 N. E. 514; *Whiteley, etc., Castings Co.* v. *Wishon* (1908), 42 Ind. App. 288, 85 N. E. 832; *Evansville Hoop, etc., Co.* v. *Bailey* (1908), 43 Ind. App. 153, 84 N. E. 549; *Hohenstein, etc., Co.* v. *Matthews* (1910), 46 Ind. App. 616, 92 N. E. 196; *Pinnell* v. *Cutsinger* (1909), 44 Ind. App. 419, 89 N. E. 493; *Watt* v. *Mishawaka Paper, etc., Co.* (1913), 53 Ind. App. 682, 99 N. E. 1029; *F. Bimel Co.* v. *Harter* (1912), 51 Ind. App. 267, 98 N. E. 360; *W. McMillen & Son* v. *Hall* (1915), 59 Ind. App. 545, 109 N. E. 424.

The doctrine of assumed risk has no application where the alleged negligence consists of the violation of a duty imposed by statute. This is a full and complete answer to the second alleged defect. *Davis Coal Co.* v. *Polland* (1901), 158 Ind. 607, 62 N. E. 492, 92 Am. St. 319; *Monteith* v. *Kokomo, etc., Co., supra; American, etc., Mill Co.* v. *Hullinger* (1903), 161 Ind. 673, 67 N. E. 986, 69 N. E.

460; *Green* v. *American Car, etc., Co., supra; Bessler* v. *Laughlin* (1906), 168 Ind. 38, 79 N. E. 1033; *U. S. Cement Co.* v. *Cooper, supra; King* v. *Inland Steel Co., supra; Vandalia R. Co.* v. *Stillwell* (1913), 181 Ind. 267, 104 N. E. 289, Ann. Cas. 1916D 258; *Cleveland, etc., R. Co.* v. *Oesterling* (1914), 182 Ind. 481, 103 N. E. 401; *Doan* v. *E. C. Atkins & Co.* (1915), 184 Ind. 678, 111 N. E. 312; *Chamberlain* v. *Waymire* (1903), 32 Ind. App. 442, 68 N. E. 306, 70 N. E. 81; *Brower* v. *Locke* (1903), 31 Ind. App. 353, 67 N. E. 1015; *Whiteley, etc., Castings Co.* v. *Wishon, supra; F. Bimel Co.* v. *Harter, supra; American Car, etc., Co.* v. *Wyatt* (1914), 58 Ind. App. 161, 108 N. E. 12; *Benkowski* v. *Sanders, etc., Co.* (1915), 60 Ind. App. 374, 109 N. E. 924.

(2)   On appellant's request the court submitted to the jury thirty-five interrogatories, and appellant contends that the answers to certain interrogatories show that it was impracticable to guard or cover more than three-fourths of the emery wheel; that, in the event of the breaking or bursting of the wheel, fragments would be hurled through the unguarded one-fourth; that all danger would not thereby be eliminated, and that therefore there was no duty resting on appellant to guard the wheel at all.   As supporting this contention appellant relies on the following interrogatories and answers:

"14.   Was it necessary that one-quarter of the wheel immediately in front of plaintiff be open and exposed? Ans. Yes. 16.   In doing the work he was doing, did plaintiff stand in front of and facing the emery wheel? Ans. Yes. 17.   While plaintiff was grinding said casting, did the emery wheel break? Ans. Yes. 17½.   Did the emery wheel break because

the plaintiff applied side pressure on the same while grinding the car slide? Ans. No. 18. If you answer the last question 'No,' state why. it did break. Ans. No evidence.''

As above stated, the statutory requirement that every dangerous machine must be properly guarded is limited by one condition only, viz.: *if practicable so to do.* The courts have expressed this condition in various words, as evidenced by the following: ''without rendering it useless for the purpose for which it was intended'' (*Laporte Carriage Co.* v. *Sullender, supra*); ''without destroying its efficiency or use,''; ''as not to render it inefficient or useless,''; ''without affecting its efficiency or utility,''; ''so as not to render it inefficient'' (*State* v. *Rodgers* [1910], 175 Ind. 25, 93 N. E. 223); ''without affecting the practical utility of the machinery'' (*Cincinnati, etc., R. Co.* v. *Armuth, supra*); ''without impairing its utility'' (*Pein* v. *Miznerr, supra*); ''without destroying their usefulness'' (*Robbins* v. *Ft. Wayne Iron, etc., Co., supra*); ''without interfering with its use'' (*Evansville Hoop, etc., Co.* v. *Bailey, supra*); where ''it is both possible and practicable'' (*Tucker, etc., Mfg. Co.* v. *Staley, supra*); ''wherever it is practicable to do so'' (*Morgantown Mfg. Co.* v. *Hicks* [1910], 46 Ind. App. 623, 92 N. E. 199). From these varying expressions the purpose of the condition may be readily understood.

In this connection we must have a due regard for the importance of the word ''properly'' as used in the statute. Where it is not practicable to guard a dangerous machine so fully and securely as to eliminate all danger, but it is practicable to guard it partially and in such manner as to reduce the danger to

the minimum, then doubtless such partial guarding is a compliance with the statutory requirement.

By its general verdict the jury necessarily found, as an essential element thereof, that it was practicable to have properly guarded the emery wheel. Now, we are asked to say that on this point there is an irreconcilable conflict between the answers to said interrogatories and the general verdict.

6. In determining whether such conflict exists, we must consider all the other interrogatories and answers, must indulge all inferences and reasonable presumptions in favor of the correctness of the general verdict, and may consider any fact provable under the issues. *Catterson* v. *Hall* (1905), 37 Ind. App. 341, 76 N. E. 889; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1906), 168 Ind. 438, 78 N. E. 1033; *Louisville, etc., R. Co.* v. *Creek* (1892), 130 Ind. 139, 29 N. E. 481, 14 L. R. A. 733.

The following interrogatories may not be ignored: "29. Was it necessary to have a guard or covering over the wheel which plaintiff found on the arbor in order to make it safe for the work he was doing? Ans. Yes. 30. If you answer the last question 'Yes,' state why it was so necessary. Ans. To make it safe."

7. When all the things which it is our duty and privilege to consider have been taken into account, it becomes apparent that the jurors were convinced that an emery wheel when operated at a high rate of speed is likely to break or burst; that it was practicable to have guarded the particular emery wheel with which appellee was working when he received his injuries by covering the upper one-half of said wheel with a hood of steel, securely at-

tached to the bench, leaving the lower part of the wheel exposed, to which exposed portion the workman could apply the object to be ground, and that when so guarded the danger to the workman would have been minimized and the wheel would have been properly guarded with respect to its utility and the safety of the workman.

Interrogatory No. 14 does not definitely locate the quarter of the wheel necessary to be exposed. It can reasonably be construed to refer to the quarter below a horizontal line passing through the center of the wheel, and next to the workman; for that quarter would be "immediately in front" of him. Of course, the proper manner of guarding the wheel was primarily a problem for experienced men—mechanical engineers—rather than lawyers. We assume that appellant in its effort to enlighten the jury on this point presented all the evidence available to sustain its contention. We assume also that the jurors took into account the relative heights of workman and machine, the position and posture of the workman while holding the car slide against the wheel, the fact that the wheel revolved toward him from the highest point on its circumference, and that law of physics which determines the direction a fragment must take when hurled from a rapidly revolving wheel; and that from these considerations the jurors concluded that if the wheel had been guarded as above indicated, the workman's head and body could not have been hit by the flying fragments, and therefore the failure to guard was the proximate cause of his injury. When so understood, the interrogatories and answers harmonize, rather than conflict, with the general verdict.

(3) Under the last assignment of error appellant asserts that the verdict is contrary to law because the accident was one that could not reasonably have been anticipated by appellant. In order to justify the finding that appellant was negligent in failing properly to guard the emery wheel, it was not necessary to show that the identical injury to appellee which resulted from its negligence should have been anticipated; but it is sufficient if by ordinary care and prudence appellant should have known that some injury might result to some of its employes from its failure so to guard the wheel. *Davis* v. *Mercer Lumber Co.* (1904), 164 Ind. 413, 73 N. E. 899; *Bessler* v. *Laughlin, supra; King* v. *Inland Steel Co., supra.* The jury has decided that the emery wheel, when operated in the manner described in the complaint, was a dangerous machine; and it follows, as a matter of law, that appellant was bound to take notice of its dangerous character and to anticipate that injury to its employes would probably result from the failure properly to guard it.

From the entire record we are convinced that this cause was ably tried, and we are especially impressed that the jury was correctly instructed and in a spirit of absolute fairness. Judgment affirmed.

NOTE.—Reported in 116 N. E. 4. Master and servant: liability of master to servant injured by bursting of emery wheel, Ann. Cas. 1912B 1334; servant's assumption of risk of master's breach of statutory duty, 26 Cyc 1180, 4 Ann. Cas. 599, 13 Ann. Cas. 36, Ann. Cas. 1913C 210, 19 L. R. A. (N. S.) 646, 22 L. R. A. (N. S.) 634, 33 L. R. A. (N. S.) 646, 42 L. R. A. (N. S.) 1229; duty of master to guard dangerous machinery, 98 Am St. 299; what is comprehended in expression "machinery of every description" as used in statute relative to guards, 30 L. R. A. (N. S.) 36. See under (1, 5) 26 Cyc 1134; (2) 26 Cyc 1463; (3) 26 Cyc 1392; (8, 9) 26 Cyc 1093.